WO                                                                                                       SH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Abraham Ntiamoah, | No. CV 19-05807-PHX-JAT-JFM |
| Plaintiff, | |
| v. | **ORDER** |
| Unknown Party, et al., | |
| Defendants. | |

Plaintiff Abraham Ntiamoah, who is currently confined in the Arizona State Prison Complex (ASPC)-Florence, Browning Unit in Florence, Arizona, brought this civil rights actiom pursuant to 42 U.S.C. § 1983.  Defendant moves for summary judgment. (Doc. 95.) Despite being warned of his right and obligation to respond to the Motion for Summary Judgment, Plaintiff failed to respond, and the time to do so has expired.[1]

**I.      Background**

On screening the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment excessive force and threat-to-safety claims against Corrections Officer (CO) Burrel in Count One and an Eighth Amendment medical care claim against Defendant Burrel in Count Two and directed Burrel to answer these claims.  (Doc. 10.)  The Court also determined that Plaintiff stated these same claims against the five unknown Defendants, and the Court gave Plaintiff 120 days to discover the

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response.  (Doc. 97.)

names of the unknown Defendants and substitute those names for the fictitious monikers. (*Id.*) The Court dismissed the remaining claims and Defendants. (*Id.*)

Thereafter, Plaintiff substituted "Alisha Burrell" for Defendant Burrel[2] and "Sergeant Llames" for Unknown Defendant #1. (Doc. 24.) On January 13, 2021, the Court gave Plaintiff until January 27, 2021 to show cause why Defendant Llames should not be dismissed for failure to serve. (Doc. 102.)[3] Unknown Defendants #3 and #4 were subsequently dismissed for failure to substitute and serve. (Doc. 101.) The Court extended the deadline for Plaintiff to substitute the real names of Unknown Defendants #5 and #6 to January 21, 2021. (Doc. 102.)[4]

Defendant Burrell now moves for summary judgment and argues that her conduct did not amount to deliberate indifference.

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

---

[2] Hereinafter, the Court will spell Defendant's surname as "Burrell."

[3] As of the writing of this Order, Plaintiff has not responded to the Court's Order to Show Cause, and Defendant Llames has not been served. Accordingly, Defendant Llames will be dismissed without prejudice for failure to serve.

[4] As of the writing of this Order, Plaintiff has not filed a notice of substitution for Unknown Defendants #5 and #6, and the time to do so has passed. Accordingly, these Defendants will be dismissed without prejudice for failure to substitute and serve.

1  governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable
2  jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S.
3  242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th
4  Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its
5  favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however,
6  it must "come forward with specific facts showing that there is a genuine issue for trial."
7  *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal
8  citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Facts[5]

#### A. Plaintiff's Complaint

In the Complaint, Plaintiff states that on September 20, 2018, he was involved in a fight with another prisoner and that during the fight, a CO II "discharged an entire 24-36 ounce canister of [pepper spray] directly in the Plaintiff's eyes, face, chest and hair and body are[a]s." (Doc. 1 at 5.) After the fight was stopped, Plaintiff was escorted to the medical unit, where Defendant Burrell and others were responsible for decontaminating Plaintiff. (*Id.*) Defendant Burrell was notified by a Special Security Officer that Plaintiff was allergic to pepper spray and that he needed to be thoroughly decontaminated as a result. (*Id.* 5, 9.) Burrell failed to complete the decontamination procedure "by only water rinsing the mace out of Plaintiff's eyes and failing and refusing to provide the Plaintiff with a new

---

[5] Because Plaintiff failed to file a response or controverting statement of facts, the Court will consider Defendant's facts as undisputed unless they are clearly controverted by Plaintiff's first-hand allegations in the verified Complaint or other evidence on the record. Where the nonmovant is a pro se litigant, the Court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

issue of clothing, socks and underwear and excha[]nging] them with his contaminated clothes." (*Id.* at 5, 9–10.) After decontamination, Defendant Burrell took Plaintiff to the holding cage area located outside of the medical building, and Defendant Burrell returned inside the medical building. (*Id.* at 6.) At some point, Defendant Burrell returned to the holding cage area with a nurse and asked Plaintiff what was wrong. (*Id.* at 7.) Plaintiff responded that one of the COs had turned on the water misters and that the water was causing the pepper spray to reactivate and get into his eyes and causing him pain. (*Id.*) Defendant Burrell asked what she could do to stop Plaintiff's pain, and Plaintiff asked for the water to be turned off, to be provided non-contaminated clothing, and to be taken back into the medical building to be assessed for an allergic reaction. (*Id.*) Defendant Burrell refused, and the nurse checked Plaintiff's blood pressure and gave him a Benadryl. (*Id.*) Plaintiff asked Defendant Burrell to call a Sergeant about the situation, and Defendant Burrell went back inside the medical building. (*Id.*) Defendant Burrell returned about 20 minutes later and told Plaintiff that she had notified medical staff that Plaintiff was in need of medical attention and had also spoken to a Sergeant; Defendant Burrell informed Plaintiff that the Sergeant had advised her not to turn off the misters or provide Plaintiff with clothing or a towel and to inform the COs and the medical staff not to assist Plaintiff. (*Id.*) Plaintiff explained that he was in a lot of pain, but Defendant Burrell told Plaintiff that "she can't help him." (*Id.*) Plaintiff was kept in the holding cage for approximately four hours. (*Id.*) Each time Plaintiff asked a passing nurse or CO for medical assistance, Defendant Burrell, pursuant to the Sergeant's orders, would stop them from helping Plaintiff. (*Id.* at 7, 11.)

### B. Defendant's Evidence

On September 20, 2018, at approximately 7:06 a.m., Sergeant Llamas[6] observed three to four prisoners fighting—one of whom was identified as Plaintiff—in front of cell block ("CB") 4 at the ASPC-Florence Central Unit and activated the Incident Command

---

[6] Presumably, this is the correct spelling of the surname of now dismissed Defendant "Llames."

- 4 -

System ("ICS"). (Doc. 96 (Defs.' Statement of Facts) ¶¶ 1–2.) Following the activation of ICS, CO Celaya gave the prisoners verbal directives to stop, and when the prisoners failed to comply, he deployed his pepper spray. (*Id.* ¶ 7.) The prisoners were then restrained. (*Id.* ¶ 8.) Sergeant Llamas took Plaintiff to the decontamination station in front of CB 3; as Sergeant Llamas was decontaminating Plaintiff, he was relieved by officers Celaya and Reynolds. (*Id.* ¶ 10.) Celaya and Reynolds continued to decontaminate Plaintiff and then escorted him to a medical holding enclosure, where he was evaluated by medical staff. (*Id.* ¶ 11; Doc. 96-1 at 5.) The medical staff began their evaluation of the prisoners involved in the fight at approximately 7:28 a.m.; all of the prisoners had been evaluated by 7:50 a.m. (Doc. 96-1 at 4.)

Defendant Burrell is not a medical provider and does not have any specialized medical training. (*Id.* at 12 (Burrell Decl. ¶ 10).) Clinical decisions regarding prisoner medical treatment is the sole responsibility of the prison medical staff. (*Id.* ¶ 11.) As a CO II assigned to the medical building, Defendant Burrell was responsible for security inside the building. Defendant Burrell did not have any involvement in prisoners' medical treatment plans, and she could not make a healthcare provider provide medical services. (*Id.*)

The medical building at the Central Unit has multiple enclosures outside of the building that are typically used to separate prisoners after there has been an altercation. (*Id.* at 13 (Burrell Decl. ¶¶ 15–16).) Because these enclosures are outside, they are equipped with water misting systems to regulate their temperature during the summer months, when temperatures in Florence, Arizona are frequently over 100 degrees Fahrenheit. (*Id.* ¶¶ 17–18.)

The typical process for decontaminating a prisoner who has been exposed to chemical agents is to flush the affected area with water for several minutes or until the remaining chemical agent was sufficiently diluted. (*Id.* ¶ 20.) Once the affected area has been flushed with water, the prisoner is given a new set of clothing to change into and then escorted to the medical building for examination. (*Id.* ¶¶ 23–24.) The Central Unit had

several locations where decontamination could take place, but neither the medical building nor the outdoor enclosures are used for decontamination. (*Id.* ¶¶ 21–22.)

Defendant Burrell received training on decontaminating prisoners who have been exposed to chemical agents. (*Id.* ¶ 19.) Based on her training and experience, water does not reactivate chemical agents but instead gradually dilutes them. (*Id.* ¶ 26.)

The use of chemical agents, such as pepper spray, requires officers to activate the ICS; the officers who respond to the ICS are responsible for the prisoners involved, including decontaminating the prisoners if chemical agents are used. (*Id.* at 13–14 (Burrell Decl. ¶¶ 27, 30–31).) Defendant Burrell was not a member of the response team that responded to the September 20, 2018 incident involving Plaintiff; she did not deploy or observe any officers deploy pepper spray on Plaintiff, was not involved in Plaintiff's decontamination process, and was not involved with obtaining medical attention for Plaintiff after the decontamination process. (*Id.* at 14 (Burrell Decl. ¶¶ 32–37.)

Defendant Burrell's post duties on September 20, 2018 were limited to providing security inside the medical building; she was not responsible for prisoner held in the outdoor enclosures. (*Id.* at 15 (Burrell Decl. ¶¶ 44–45).) She would have only been able to observe a prisoner in the outside enclosures upon her entrance and exit from the medical building. (*Id.* ¶ 46.) Defendant Burrell denies interfering with any medical personnel's attempts to provide medical treatment to Plaintiff and denies interfering with any correctional staff's attempts to obtain medical attention on Plaintiff's behalf. (*Id.* ¶ 43.)

### IV. Excessive Force

#### A. Legal Standard

Use of excessive force against a prisoner violates the prisoner's Eighth Amendment right to be free from cruel and unusual punishment. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). The use of force is constitutional if it is used in a good faith effort to keep or restore discipline; it is unconstitutional if it is used "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). Not "every malevolent touch by a prison guard gives rise to a federal cause of action"; thus, de

minimis uses of physical force, provided that use of force is not "repugnant to the conscience of mankind," do not offend the Constitution. *Hudson v. McMillan*, 503 U.S. 1, 9–10 (1992).

A court considers five factors in determining whether a defendant's use of force was malicious and sadistic for the purpose of causing harm: (1) the extent of the injury, (2) the need for force, (3) the relationship between the need and the amount of force used, (4) the threat "reasonably perceived" by the officials, and (5) "any efforts made to temper the severity" of the force. *Id.* at 7 (citing *Whitley*, 475 U.S. at 321). When reviewing these *Hudson* factors, the court must remember that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321–22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). *Id.* at 9.

Here, it is undisputed that Defendant Burrell did not use pepper spray on Plaintiff and that she was not present when pepper spray was deployed on Plaintiff. Moreover, there is absolutely no evidence in the record that Defendant Burrell used any amount of force on Plaintiff during her encounters with him. Absent any evidence showing that Defendant Burrell used force against, Plaintiff's excessive force claim against her must be dismissed.

V.     **Threat-to-Safety**

    A.     **Legal Standard**

Under the Eighth Amendment, prison officials must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To succeed on a threat-to-safety claim, a plaintiff must satisfy two elements: (1) the objective element, which requires a prisoner to show that the complained of conditions posed a "substantial risk of serious harm"; and (2) the subjective element, which requires a prisoner to show that the defendant was deliberately indifferent to that risk. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)). A prison official is deliberately indifferent

"if he knows that inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 844.

To prove deliberate indifference, a plaintiff must show that the official knew of and disregarded an excessive risk to prisoner safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. *Id.* at 837. But the plaintiff need not show that the defendant acted or failed to act believing that harm would actually befall the inmate; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. To prove knowledge of the risk, the plaintiff may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Id.*

In addition, a plaintiff alleging deliberate indifference must "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978).

Finally, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844. Prison officials do not escape liability, however, if the evidence shows that that they "merely refused to verify underlying facts that [they] strongly suspected to be true, or declined to confirm inferences of risk that [they] strongly suspected to exist." *Id.* at 843 n.8.

**B.     Discussion**

Construing the facts in Plaintiff's favor, Defendant Burrell had been informed that Plaintiff was allergic to pepper spray, and she was aware, via Plaintiff's verbal complaints,

that Plaintiff continued to experience significant pain from the pepper spray after he was placed in the outdoor enclosure.

Defendant Burrell asserts that she does not recall Plaintiff asking her to seek medical attention on his behalf, does not recall Plaintiff being in obvious distress, and that if she had observed Plaintiff in distress or been asked to obtain medical attention on his behalf, she would have done so. (Doc. 96-1 at 14 (Burrell Decl. ¶¶ 39–41).) But Defendant Burrell's statements are not competent evidence to show that Plaintiff did not approach her with his medical complaints or ask her to receive medical attention on his behalf. Defendant Burrell's speculation as to what she would have done in the situation is subject to a credibility dispute that cannot be resolved on summary judgment because "affidavits in support of a motion for summary judgment require more than a prison officer's pledge of good intentions; such affidavits must demonstrate personal knowledge of the events to preclude a finding that material issues of fact exist with respect to the claim." *Aguilar v. Kuloloia*, No. 2:06-CV-01002-KJD-PAL, 2007 WL 2891503, at *9 (D. Nev. Sept. 28, 2007). And Defendant Burrell's failure to remember factual information is insufficient because it also does not show personal knowledge. *See* Fed. R. Civ. P. 56(c)(4) (sworn statement used to support summary judgment motion must be made on personal knowledge); *see Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412-13 (9th Cir. 1995) (declaration on information and belief is entitled to no weight where declarant lacks personal knowledge).

Thus, taking Plaintiff's evidence as true, the facts show that Defendant Burrell was aware of a substantial risk of serious harm, and the objective element of the deliberate indifference analysis has been met. The Court must therefore consider whether Defendant Burrell disregarded the substantial risk of serious harm to Plaintiff.

The Court must accept as true Plaintiff's statements that Defendant Burrell refused to turn off the misters, refused to provide Plaintiff with a set of uncontaminated clothing, refused to take Plaintiff into the medical building for further evaluation, and stopped any medical staff who passed by Plaintiff from offering him any assistance. However, Plaintiff

also states that in response to his complaints of pain, Defendant Burrell went into the medical building and notified the medical staff and a Sergeant that Plaintiff needed medical attention, but the Sergeant ordered Defendant Burrell not to turn off the misters or provide Plaintiff with clothing or a towel and to inform the COs and the medical staff not to assist Plaintiff. Thus, construing Plaintiff's facts as true, after being made aware of Plaintiff's continued pain from the peppery spray, Defendant Burrell did in fact seek medical attention on Plaintiff's behalf, but she was ordered to deny Plaintiff's requests by a higher ranking official. The record shows that Defendant Burrell is not a medical professional and does not have specialized medical training, and there is no evidence that Defendant Burrell could have overridden the Sergeant's instructions or that Defendant Burrell was authorized to order the medical staff to provide, or not provide, treatment to Plaintiff. To the extent Plaintiff claims that the decontamination process employed by Defendant Burrell amounted to deliberate indifference, he has not presented any evidence to support this statement, and there is no evidence in the record that rinsing the affected areas with water was medically unacceptable. On these facts, although Plaintiff's pain was not ultimately averted, Defendant Burrell took reasonable steps to abate the risk of harm to Plaintiff by informing the medical staff and the supervising Sergeant about Plaintiff's pain, and she was directed to deny Plaintiff's requests by a higher ranking prison official. Accordingly, Defendant Burrell's response to the risk of harm to Plaintiff did not amount to deliberate indifference, and Plaintiff's threat-to-safety claim must be dismissed.

**VI.    Medical Claim**

      **A.    Legal Standard**

To succeed on a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both

know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

**B.     Discussion**

Construing the facts in Plaintiff's favor, because of the pepper spray, Plaintiff suffered significant pain for approximately four hours. Further, the Ninth Circuit has found that the effects of pepper spray—including pain, breathing problems, choking, and gagging—constitute a serious medical need. *Clement v. Gomez*, 298 F.3d 903, 904-05 (9th Cir. 2002); *see also United States v. Neill*, 166 F.3d 943, 949 (9th Cir. 1999) (pepper spray is a "dangerous weapon" under the criminal sentencing guidelines because it is capable of

inflicting serious bodily injury or death).  Accordingly, the objective prong of the analysis has been satisfied, and the Court must determine whether Defendant Burrell disregarded Plaintiff's serious medical need.

As mentioned above, Defendant Burrell is not a trained medical professional, and she does not make clinical decisions regarding prisoner medical treatment.  There is no evidence that she can make treatment or diagnostic decisions or order the medical staff to provide any particular treatment to a prisoner.  Taking Plaintiff's evidence as true, Defendant Burrell was present when a nurse checked Plaintiff's blood pressure and gave him Benadryl, and the nurse did not order any additional medical care for Plaintiff.  It was reasonable for Defendant Burrell, with her lack of medical training, to rely on the nurse's treatment decisions.  Further, according to Plaintiff's facts, when he informed Defendant Burrell of his continued pain, Defendant Burrell informed the medical staff and a Sergeant about Plaintiff's complaints, and the Sergeant ordered for Plaintiff to not receive any additional assistance.  There is no evidence that Defendant Burrell was authorized to override the Sergeant's decision or that Defendant Burrell had any authority to order the medical staff to provide, or not provide, treatment to Plaintiff.  Further, as discussed previously, Plaintiff has not presented any evidence that the decontamination process employed by Defendant Burrell—rinsing the affected areas with water—was medically inappropriate or amounted to deliberate indifference.  On this record, the facts do not indicate that Defendant Burrell's response to Plaintiff's serious medical need amounted to an Eighth Amendment violation, and Plaintiff's medical claim will be dismissed.

**IT IS ORDERED:**

(1) Defendant Llames, Unknown Defendant #5, and Unknown Defendant #6 are **dismissed without prejudice** for failure to serve.

(2) The reference to the Magistrate Judge is withdrawn as to Defendant Burrell's Motion for Summary Judgment (Doc. 95), and the Motion is **granted**.

. . .

. . .

(3)     The Clerk of Court must terminate the action and enter judgment accordingly.

Dated this 5th day of February, 2021.

James A. Teilborg
Senior United States District Judge